**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | |
|---|---|
| ADENIS ENRIQUE PRIETO REFUNJOL, MORY KEITA, and SIDI NJIE,<br><br>Petitioner-Plaintiffs,<br><br>- vs. -<br><br>REBECCA ADDUCCI, in her official capacity as Detroit District Director of U.S. Immigration & Customs Enforcement; and U.S. IMMIGRATION AND CUSTOMS ENFORCEMENT,<br><br>Respondent-Defendants. | Case No. ___20-cv-2099___ |

**PETITIONER-PLAINTIFFS' MOTION FOR TEMPORARY RESTRAINING ORDER AND REQUEST FOR IMMEDIATE HEARING**

Petitioner-Plaintiffs (Plaintiffs) Adenis Enrique Prieto Refunjol, Mory Keita, and Sidi Nije hereby move this Court, pursuant to Fed. R. Civ. P. 65, for a temporary restraining order, and respectfully request a hearing at the soonest time possible. Last night, a prisoner at the Morrow County Jail tested positive for COVID-19 after being held for 10 days in the general population there; days before, the same thing occurred at Butler County Jail. Plaintiffs are three vulnerable ICE detainees at the Butler and Morrow County Jails, who seek safe and immediate release based on their own risk of serious harm, and harm to the public, if they are exposed to the virus. The grounds for this Motion are set forth in the attached Memorandum in Support and accompanying declarations.

1

Dated: April 24, 2020

Respectfully submitted,

*/s/ Elizabeth Bonham*
Elizabeth Bonham (0093733)
Freda J. Levenson (0045916)
ACLU of Ohio Foundation
4506 Chester Avenue
Cleveland, OH 44102
Phone: (614) 586-1972
Fax: (614) 586-1974
flevenson@acluohio.org
ebonham@acluohio.org

Claire Chevrier*
ACLU of Ohio Foundation
1108 City Park Ave.
Ste. 203
Columbus, OH 43206
Phone: (614) 586-1972
Fax: (614) 586-1974
cchevrier@acluohio.org

* Application for admission *pro hac vice* forthcoming

As a result of COVID-19 closures, reaching the ACLU of Ohio offices may cause delay. Because of the expedited nature of this Motion, if necessary please contact counsel at:

ebonham@acluohio.org OR
(440)724-5164 (cell)

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | |
|---|---|
| ADENIS ENRIQUE PRIETO REFUNJOL, MORY KEITA, and SIDI NJIE,<br><br>        Petitioner-Plaintiffs,<br><br><br> - vs. -<br><br>REBECCA ADDUCCI, in her official capacity as Detroit District Director of U.S. Immigration & Customs Enforcement; and U.S. IMMIGRATION AND CUSTOMS ENFORCEMENT,<br><br>        Respondent-Defendants. | Case No. _____ |

**MEMORANDUM IN SUPPORT OF PETITIONER-PLAINTIFFS'**
**MOTION FOR TEMPORARY RESTRAINING ORDER**

## **INTRODUCTION**

The COVID-19 pandemic is ravaging Ohio—particularly its prisons and jails—and last night the first positive case was confirmed at the Morrow County Jail. Just over a week before that, Butler County Jail confirmed its first positive case. In response to the pandemic, these jails have largely depopulated their citizen prisoners. In contrast, Defendant U.S. Immigration and Customs Enforcement (ICE) continues to confine its detainees in the two facilities. Moreover, ICE continues to transfer its detainees in between the two facilities, to transfer people there from the also-contaminated Franklin County Jail, and to commit new detainees from the public to the facilities—paying no regard to spreading the virus. Plaintiffs Adenis Enrique Prieto Refunjol, Mory Keita, and Sidi Njie (Plaintiffs) are people whom ICE is detaining at these jails. These men are in frail health, suffering from medical conditions that make them susceptible to grave illness or death if they contract COVID-19. And now that the virus has certainly entered the confined areas where they are jailed, they are at imminent risk of contracting it. This Motion seeks the Plaintiffs' immediate release from the dangerous detention centers in which they are confined, to homes where they can safely quarantine and distance themselves from the virus's spread.

Due to the confined, congregate nature of detention facilities, COVID-19 has already infected hundreds of both citizen and non-citizen detainees across Ohio and the country - and it will certainly infect far too many more.  Tragically, the virus has already reached twenty-six ICE detention facilities—including the Butler County Jail as of mid-April, and now, as of yesterday, Morrow County Jail. COVID-19 has no vaccine, no treatment, and no cure. It can be transmitted by people who are pre-symptomatic or completely asymptomatic.  By the time a person has tested positive, or even begun to feel early symptoms, they may have already infected countless other people with whom they have had contact.  The only option to avoid contracting COVID-19 is to practice social distancing in addition to vigilant hygiene. At Butler and Morrow, because of the

1

enclosed, close quarters in which detainees are held, it is impossible to practice either measure. Now that there are positive tests in both facilities, Plaintiffs must be released as an emergency matter, so that they can escape transmission while there is still time.

Given the nature of this pandemic, there is no way to ensure that at-risk individuals such as Plaintiffs can avoid exposure to COVID-19 while they remain in detention.  This near-certain exposure to a virulent, possibly deadly disease violates their constitutional rights. There is no way to protect them short of immediate release.  Their release is also in the public interest because contagion among the detainee population and jail staff will deplete the Butler and Morrow County areas of limited resources, including ventilators and intensive care units. Moreover, because staff goes in and out of jails, if the facilities do not depopulate, they become incubators of disease and vectors of community spread to the surrounding areas. As Ohio Governor Mike DeWine recently said, "Timing is everything. Every day and every person matters." Governor Mike DeWine (@GovMikeDeWine), Twitter (Mar. 16, 2020, 3:18PM), https://twitter.com/GovMikeDeWine/status/1239632106717937664?s=20.

The Court should grant Plaintiffs' Motion and order their immediate release.

## STATEMENT OF FACTS

Last night at about 9:00 p.m., Plaintiff Sidi Njie called his wife and told her that what he had feared for weeks had finally, inevitably occurred: a detainee at the Morrow County Jail where Mr. Njie is being held tested positive for COVID-19. Declaration of Brandy Jatta (Jatta Decl.) attached at ¶ 7.  This person had been exhibiting symptoms - fever and weakness - while living in the general population for about 10 days. The Morrow corrections staff finally put the person into isolation, and last night told the other detainees, including Mr. Njie and Plaintiff Mory Keita, about the positive test. Since then, the staff has isolated this person's also-febrile bunk-mate. They have taken no other precautionary steps.

2

Just ten days prior, the first detainee at the Butler County Jail, where ICE is holding Plaintiff Adenis Refunjol, tested positive for the virus. *See id.* The jail moved that person and his cellmate out of the facility—then took no additional precautions. ICE, in the meantime, continued to move its detainees between Butler and Morrow local jails; to incarcerate new people from the community in both facilities; and to move people into Butler and Morrow from the Franklin County Jail—another facility with positive tests—as well. Despite this, ICE has not provided further testing or taken any additional safety precautions at either facility.

The three Plaintiffs here are medically vulnerable people and are now at imminent risk of contracting this often-deadly virus. Mr. Keita suffers from asthma, for which he needs an inhaler. Declaration of Mory Keita (Keita Decl.), attached, at ¶ 6. Mr. Nije is in cancer recovery, and continues to require carcinoma treatments. *See* Jatta Decl. at ¶ 5; Declaration of Nazly Mamedova (Mamedova Decl.), attached, at ¶ 9. Mr. Refunjol suffers from coronary disease and asthma. Declaration of Karla Donado (Donado Decl.), attached, at ¶ 4. All of these health complications heighten the risk Plaintiffs face from COVID-19, and if they do contract the virus, they have a higher likelihood of serious illness or death. *See, e.g.* CDC, *People Who are at Higher Risk for Severe Illness* (updated Apr. 15, 2020) https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-at-higher-risk.html (listing asthma, respiratory or lung disease, and coronary disease, among other issues, as risk factors for contracting COVID-19); *see also* CDC, *Coronavirus disease 2019 (COVID-19) Situation Report – 51* (Mar. 11, 2020), available at https://www.who.int/docs/default-source/coronaviruse/situation-reports/20200311-sitrep-51-covid-19.pdf?sfvrsn=1ba62e57_4. Fortunately, each Plaintiff remains without symptoms at the time of this filing. But confined to the congregate detention environments, they are unable to

protect themselves from the known virus: they cannot socially distance or practice hygiene. They are trapped.

The number of confirmed cases of COVID-19 are rising, as is the death toll. *See* N.Y. Times, *Coronavirus in the U.S.: Latest Map and Case Count* (Apr. 23, 2020 at 9:17 p.m.) https://www.nytimes.com/interactive/2020/us/coronavirus-us-cases.html (865,252 U.S. cases and 44,300 deaths). The confirmed cases in Butler and Morrow Counties, surrounding the jails at issue here, increase daily; as of the time of this filing, Butler County had 201 confirmed cases and 4 deaths, and Morrow County had 25 confirmed cases. *See id.* And in settings like ICE detention the spread of COVID-19 can cause a "tinderbox" scenario—once the virus has entered a confinement setting like a jail, it spreads rapidly and mercilessly unless there is immediate depopulation and other precautions. *See, e.g,* Catherine Shoichet, CNN, *Doctors warn of tinderbox scenario if coronavirus spreads in ICE detention* (Mar. 20, 2020, 8:21 pm.) https://www.cnn.com/2020/03/20/health/doctors-ice-detention-coronavirus/index.html. This week Ohio's prison system made national news when the Marion Correctional Institute revealed that 78% of its population tested positive shortly after the virus's introduction—making that facility itself one of the largest hot zones in the country. *See, e.g.,* Josian Bates, *Ohio began mass testing incarcerated people for COVID-19. The results paint a bleak picture for the U.S. prison system,* Time (Apr. 22, 2020) available at https://time.com/5825030/ohio-mass-testing-prisons-coronavirus-outbreaks/.

In light of this, federal courts around the country have acted to release ICE and other detainees from dangerous detention environments, particularly those who are medically vulnerable or compromised in other ways. *See, e.g.,* Preliminary Injunction, *Kelvin Hernandez Roman, et al. v. Wolf, et al.,* W.D.C.A. No. edcv-20-786-jth (Apr. 23, 2020) (ordering ICE

4

detention center to reduce its population by May 4 including releasing medically vulnerable and non-criminal detainees); Order, *Wilson v. Williams,* N.D. Ohio No. 4:20-cv-00794 (Apr. 22, 2020) (requiring Elkton Federal Prison, after multiple positive tests and deaths from COVID-19, to identify and consider for release a class of medically vulnerable people); Order, *Amaya-Cruz v. ICE,* N.D. Ohio No. 1:20-cv-789 (Apr. 18, 2020); *Malam v. Adducci,* ___ F.Supp.2d ___, 2020 WL 1672662 (E.D. Mich. Apr. 5, 2020); *Thakker v. Doll,* ___ F.Supp.3dd ___, 2020 WL1671563 (M.D. Pa. Mar. 31, 2020); *Basank v. Decker*, No. 20-cv-2517 (AT), --- F. Supp. 3d ----, 2020 WL 1481503 (S.D.N.Y. Mar. 26, 2020); *Rafael L.O. v. Tsoukaris*, No. 2:20-cv-3481-JMV, 2020 WL 1808843 (D.N.J. Apr. 9, 2020); *Hope v. Doll*, No. 1:20-cv-562, Dkt. 12 (M.D. Pa. Apr. 7, 2020), *motion for reconsideration denied* (Apr. 10, 2020); *Bravo Castillo v. Barr*, No. 20-605-TJH (AFMx), --- F. Supp. 3d ----, 2020 WL 1502864 (C.D. Cal. Mar. 27, 2020); *John Doe v. Barr*, No. 3:20-cv-02141-LB (N.D. Cal. 2020); *see also Coronel v. Decker*, No. 20-cv-2472 (AJN), --- F. Supp. 3d ----, 2020 WL 1487274 (S.D.N.Y. Mar. 27, 2020) (Detainee-petitioners' "unmet medical needs" in general support argument that continued detention meets deliberate indifference standard).

So long as Plaintiffs are detained at Butler and Morrow, they cannot protect themselves; they simply cannot attain any social distance, which puts them at imminent risk of substantial bodily harm and death. Even basic hygiene products, which might help but would not resolve the grave risks, are not made available to them in these densely populated, congregate environments. Now that the virus has entered these facilities, the only way for these already health-compromised Plaintiffs to avoid serious harm is immediate release.

## I.     PLAINTIFFS ARE AT GRAVE RISK OF HARM FROM COVID-19.

<u>Sidi Njie</u>

Sidi Njie is a 34-year-old man detained in the Morrow County Jail. He was diagnosed with thyroid cancer in 2013, and had corrective surgery to remove both lobes of his thyroid in late 2014.[1] As a result of this, Mr. Njie requires regular papillary thyroid carcinoma treatments, ultrasound treatments, and may also require radioiodine ablation therapy. *See* Mamedova Decl. ¶ 9. He also needs to see an endocrinologist every three months and he must get his thyroid levels checked every six weeks, and must have his lymph nodes monitored also. He is particularly susceptible to infection or illness as a result of his surgery. He has not been able to receive adequate treatment while in ICE detention. *Id.*

Mr. Njie has been in ICE detention for almost one year. *Id.* He has lived in the United States since 2002, when he entered lawfully on a B2 tourist visa in 2002 from Gambia, and he has lived in Ohio since he moved here in 2013. He was detained in June 2019, after having initiated an asylum claim – ICE appeared at his home and detained him. His only criminal history in his 18 years residing in this country is a 2018 mayor's court charge for possession of drug paraphernalia, for which he paid a fine. With the help of his counsel, he continues to press his immigration appeal, and desires to continue living in Ohio with is family.

In addition to his medical fragility, the available path for his safe release, and the emergent COVID-19 outbreak at his facility, Mr. Njie practices Islam, and with the beginning of Ramadan today, will fast according to his religion. Because the jail does not provide halal food at all, or provide any food during the hours required for this observance, Mr. Njie will become

---

[1] Plaintiffs intend to file a motion for leave to file additional confidential medical records under seal. Because of the highly expedited nature of this filing and the particularly sensitive but relevant content of these personal medical records, Plaintiffs have not yet attached this additional supportive evidence.

inadequately nourished, putting his immune system at risk. *See id.* at ¶12. Mr. Njie lives outside of Columbus with his wife and children, in their shared home. If he is released, he will be able to return to his home and quarantine for 14 days, and subsequently continue to follow Director Acton's stay home order to keep himself, his family, and his community safe.

While detained at Morrow, Mr. Njie has been in close proximity with multiple detainees exhibiting flu-like symptoms, including the men who were ultimately isolated after their COVID-19 positive tests. At one point, Mr. Nije had to help the COVID-positive man support himself because of his weakness. He and his wife fear for his health if he must remain there.

<u>Adenis Enrique Prieto Refunjol</u>

Adenis Refunjol is a 46-year-old man detained in the Butler County Jail. He suffers from bronchial asthma and hypertrophic hypertensive cardiopathy. *See* Donado Decl. ¶ 4. These illnesses put him at greater risk for serious health complications, including higher risk of death, if he contracts COVID-19. Mr. Refunjol has been in ICE detention for almost six months. When he was first detained, he did not receive his necessary medications for over a week. Since he has been at the jail, he has had bloating and intestinal pain, in addition to flare-ups of his preexisting conditions.

Mr. Refunjol first came to the United States in 2014 on a lawful B2 visa as a tourist, and returned lawfully many times since. His most recent visa entry was in July, 2018, after which he remained here, and met his now-fiancée in Florida. He is pursuing an immigration claim to remain in the US, and does not have a removal order. ICE detained him after an OVI stop in Warren County in November of 2019. His only other criminal history in the United States was a civil fine for trespass in Florida. He is represented by attorney Nazly Mamedova in his immigration case, and he wants to return to his U.S. citizen fiancée and brother. If he is released,

he will be able to stay with his fiancée where he lives. Because her elderly mother lives with her, his fiancée has arranged for Adenis to stay with a neighbor to quarantine for the first 14 days. He will also follow all other health directives. *Id.* ¶¶ 6-7.

While at Butler County, Mr. Refunjol has had to interact with people who are visibly ill, including sharing the same telephone, toilet area, and sometimes cell with them.

<u>Mory Keita</u>

Mory Keita is a 33-year-old man being held at Morrow County jail. Mr. Keita does not know his country of origin, but ICE tells him he is from Guinea. Keita Decl. ¶ 3. He suffers from asthma, and must use an inhaler; he was diagnosed with asthma in approximately 2012. Since he has been detained, ICE has refused to provide him an inhaler despite his repeated requests. He has experienced coughing, wheezing, and difficulty breathing. In addition, since he has been detained, he has suffered from anxiety and periodic cold symptoms.

Mr. Keita was brought to the United States by his parents at the age of 3, and has lived here ever since. ICE has detained Mr. Keita on two prior occasions. Most recently, ICE was forced to release him after 90 days in detention because they were unable to secure the travel documents necessary for his removal. Mr. Keita has been detained at Morrow since ICE once again detained him in February 2020, after he had completed serving time at the Pickaway County Jail. He has no violent criminal history. If he is released, he would be able to live at the home of his friend, Shanice Patterson, in Columbus, Ohio and quarantine for 14 days in her home, and continue to follow Ohio's stay home order and care for himself, while the pandemic persists.

Mr. Keita and the man who tested positive for COVID-19 at Morrow used to sleep in bunkbed rows next to each other. For days, as the now-quarantined man experienced serious

symptoms including a high fever, Mr. Keita was forced to sleep within a couple feet of him. Now, Mr. Keita fears for his life. He remains in close contact with approximately 80 other detainees, many of whom have also been closely exposed. He continues to sleep in the shared room, eat communally, and use shared appliances like the telephone and water fountain. He also continues to interact with corrections officers, who return home to their communities every day after their shifts. Mr. Keita is being denied the ability to socially distance himself from others, putting both himself, and possibly others, at greater risk of contracting the deadly virus.

## II. DETENTION AT BUTLER AND MORROW PUTS PLAINTIFFS AT IMMINENT RISK OF SUBSTANTIAL BODILY HARM.

The danger of COVID-19 exposure to Plaintiffs is acute at Butler and Morrow: now that the virus has infiltrated these facilities, it will spread rapidly, and the structure of the facilities themselves makes them virtual incubators from which detainees cannot escape.  Detainees in these facilities are confined in large groups and lack autonomy to distance themselves. They also cannot manage who they interact with: jail staff come in and out from the community, and ICE and the local jurisdictions continue to cycle detainees in and out—and between—these facilities, even after Butler County Jail confirmed positive tests of both detainees and staff. Infectious diseases like COVID-19, which are communicable by air and touch, are exponentially more likely to spread in congregate environments like these jails. Social distancing combined with vigilant hygiene, including frequent washing of hands with soap and water, is the only known effective measure for protecting vulnerable people from contracting COVID-19.  Recent ICE guidance acknowledges the risks of COVID-19 to detainees.[2] However, even if the guidance were being followed in facilities such as Butler and Morrow—and it is not—it would be inadequate protection.

---

[2] *ICE Guidance on COVID-19* ("ICE Guidance"), U.S. Immigration & Customs Enforcement, www.ice.gov/covid19.

*First*, the physical structure of the Butler and Morrow facilities makes social distancing impossible. For example, in Morrow, Plaintiffs and other detained individuals are kept together in a group of up to eighty or more men. *E.g.* Mamedova Decl. ¶ 8. They sleep barely two feet apart, in bunkbeds, in a communal room in which they cannot avoid being well within six feet of each other either while eating, sleeping, or recreating. *Id.* For meals, they must stand in crowded lines, then sit all together in close proximity to one another to eat. *Id.* They also use one shared water fountain. At Butler, detainees sleep in small, often-shared cells, also in bunkbeds, and can have a revolving door of different cellmates. Donado Decl. ¶ 3. At both facilities, detainees have to use phones that are similarly close together, and are not disinfected between uses. All surfaces are shared. There are shared bathrooms and there are no disinfectants or sanitizers—only, at best, basic hand soap. The facilities are poorly ventilated, and many detainees have recently been febrile or coughing. Plaintiffs cannot physically escape them. Detainees are never allowed to go outside. The Butler facility is completely enclosed - it does not even have windows that open in any of the spaces where detainees are held. Since the COVID-19 pandemic, detainees at Butler are now only released from their cells 24 detainees at a time, instead of 46 detainees at a time. Few or no additional precautions have been taken at either facility.

*Second*, now that there are confirmed cases of the virus at both of these facilities, *every* detainee's serious risk of contracting it has become concrete. With a virulently contagious virus present in this environment, and no way for individual detainees to protect themselves from it, it will spread quickly. Moreover, ICE continues to transfer detainees and accept new detainees,

without testing or quarantining detainees or staff. As a result, ICE has further facilitated the spread of the virus.

*Third*, Butler and Morrow cannot ensure adequate treatment of detainees once they do become infected. People who contract COVID-19, particularly those with pre-existing conditions, often need intensive medical assistance including hospitalization. Such an advanced level of supportive care requires specialized equipment including ventilators, as well as an entire team of providers, including nurses, respiratory therapists, and physicians, which these jails do not possess. If Plaintiffs are forced to stay in these environments and they do contract COVID-19, they will necessarily rely on local hospital facilities, making these jail environments a danger not only to Plaintiffs, but to the public.

Now that this virus has entered these jails—and before the window of Plaintiffs' safety inevitably closes—Plaintiffs ask the Court to act. Plaintiffs are at risk of imminent, grave harm, and they must be released.

## III. RELEASE FROM DETENTION IS THE ONLY WAY TO PROTECT PLAINTIFFS' SAFETY AND THEIR DUE PROCESS RIGHTS.

In the current, unprecedented circumstances this pandemic presents—particularly given the new outbreaks at these two facilities—it has become impossible for Plaintiffs to remain safe while still detained at Butler and Morrow. Only their immediate release from detention can vindicate their Due Process rights and protect their lives.

A rapidly-growing consensus of health experts, doctors, courts, and prison administrators across the country have made clear that people kept in detention facilities, especially people with health complications, must be released for their own safety and for the safety of others. Ohio Chief Justice Maureen O'Connor has urged "judges to use their discretion and release people held in jail

and incarcerated individuals who are in a high-risk category for being infected with the virus."[3] Local jails across Ohio have made massive releases of their own detainees; for example, Cuyahoga County declared a state of emergency and expedited the release of over 900 inmates from county jail in March.[4] Even ICE's own subject matter experts have stressed that Defendants should depopulate their facilities to at least "75% of capacity," and consider for release "all detainees in high risk medical groups, such as older people and those with chronic disease." ICE Guidance Document, April 10, 2020, attached.[5]

## ARGUMENT

This Court should grant a temporary restraining order allowing Plaintiffs' release: (1) they are likely to succeed on the merits of their claims; (2) they are likely to suffer irreparable harm in the absence of relief; (3) the balance of equities tips in their favor; and (4) an injunction is in the public interest. *See Summit Cty. Democratic Ctrl. & Exec. Comm. v. Blackwell*, 388 F.3d 547, 552 (6th Cir. 2004). The Court may order immediate release under either 28 U.S.C. § 2241, or 28 U.S.C. § 1331.

## IV.    PLAINTIFFS ARE LIKELY TO SUCCEED ON THE MERITS.

---

[3] *Release Ohio Jail Inmates Vulnerable to Coronavirus, Chief Justice Urges*, WLWT5 (Mar. 19, 2020), https://www.wlwt.com/article/release-ohio-jail-inmates-vulnerable-to-coronavirus-chief-justice-urges/31788560,

[4] *See* Adam Ferrise, *Coronavirus Got 900 Inmates Out of Cuyahoga County's Troubled Jail When Inmate Deaths Didn't. Some Say the Changes Should Stick.* (Apr. 1, 2020), https://www.cleveland.com/court-justice/2020/04/coronavirus-got-900-inmates-out-of-cuyahoga-countys-troubled-jail-when-inmate-deaths-didnt-some-say-the-changes-should-stick.html,

[5] Former Acting Director of ICE John Sandweg has also publicly called on the agency to release "thousands" of people in order to prevent an outbreak amongst ICE facility staff and detainees. *See* John Sandweg, *I Used to Run ICE. We Need to Release the Nonviolent Detainees*, The Atlantic (Mar. 22, 2020), https://www.theatlantic.com/ideas/archive/2020/03/release-ice-detainees/608536/,

Plaintiffs are likely to establish that Defendants violated—and continue to violate—Plaintiffs' constitutional rights by condemning them to confined, close quarters, where it is impossible to practice social distancing. Defendants *cannot* adequately remedy any potential harm suffered by Plaintiffs as a result of COVID-19. Accordingly, Plaintiffs' continued detention violates their Fifth Amendment rights.

### A. Plaintiffs' Continued Detention at Butler and Morrow Violates the Fifth Amendment.

Defendants have violated, and continue to violate, Plaintiffs' constitutional Due Process rights by detaining them in conditions that in no way "reasonably relate[] to a legitimate governmental purpose." *Bell v. Wolfish,* 441 U.S. 520, 539 (1979). As civil detainees, Plaintiffs' detention is governed by the Fifth Amendment. *Id.* Under the Fifth Amendment, civil detention may not "amount to punishment of the detainee." *Id.* at 535. Because of the imminent risk they face of contracting COVID-19 now that it has entered their detention facilities, and especially in light of their fragile medical statuses, Plaintiffs' confinement is not "reasonably related to a legitimate governmental objective"; instead it is "arbitrary or purposeless[.]" *Id.* at 539; *see also J.H. v. Williamson Cty., Tenn.*, 951 F.3d 709, 717 (6th Cir. 2020) (applying *Bell* to pre-trial detainee's conditions of confinement claim).[6]

---

[6] Although Plaintiffs' claims are governed by the Fifth Amendment, their continued detention would also violate the Eight Amendment's much more stringent "deliberate indifference" standard. The Supreme Court has recognized that the government is deliberately indifferent, and therefore violates the Eighth Amendment, when it "ignores a condition of confinement that is sure or very likely to cause serious illness" by crowding Plaintiffs into living quarters with others who have "infectious maladies . . . even though the possible infection might not affect all of those exposed." *Helling v. McKinney*, 509 U.S. 25, 32–33 (1993) (upholding claim as to second hand smoke). Here, as explained in detail above, COVID-19 poses a serious risk to Plaintiffs, and that continued detention would amount to deliberate indifference under the circumstances. *See Bell*, 441 U.S. at 539. *Malam*, 2020 WL 1672662 at *12; *Thakker v. Doll*, 2020 WL 1671563, at *8 n.15 (M.D. Pa. Mar. 31, 2020). Moreover, the Supreme Court has clarified that the Eighth Amendment's deliberate indifference standard does not apply to pre-trial detainees. In *Kingsley v. Hendrickson*, 135 S. Ct. 2466, 2473 (2015), the Court held that a pretrial detainee's

Plaintiffs' detention is not "reasonably related" to its objective because it creates a serious risk of imminent illness and possibly of death. *See Bell*, 441 U.S. at 539. This disease is deadly and causes lasting damage even for the youngest, healthiest people who contract it, and the particular risks associated with it are not yet known. For any kind of medically fragile person, the risk is even greater. This risk is urgent and imminent; on the other hand, continued detention is unrelated to any legitimate governmental goal, as many federal courts have already held. *See, e.g.*, *Malam v. Adducci*, __ F. Supp. 3d __, 2020 WL 1672662 (E.D. Mich. Apr. 5, 2020) (holding that immigrant petitioner's continued detention in Michigan is both unrelated and contrary to the government purpose of carrying out her removal proceedings); *Xochihua-Jaimes v. Barr*, __ F. App'x __, No. 18-71460, 2020 WL 1429877 (9th Cir. Mar. 24, 2020) (*sua sponte* ordering immediate release of immigrant petitioner "[i]n light of the rapidly escalating public health crisis, which public health authorities predict will especially impact immigration detention centers"); *Thakker v. Doll*, __ F. Supp. 3d __, 2020 WL 1671563, at *8 (M.D. Pa. Mar. 31, 2020) ("We can see no rational relationship between a legitimate government objective and keeping Petitioners detained in unsanitary, tightly-packed environments.").

---

Fourteenth Amendment excessive force claim need only meet the objective component of a deliberate indifference claim by showing that "the force purposely or knowingly used against him was objectively unreasonable." *Id*. As the Sixth Circuit has recognized, "this shift in Fourteenth Amendment deliberate indifference jurisprudence calls into serious doubt whether [a detainee] need even show that the individual defendant-officials were subjectively aware of [the detainee's] serious medical conditions and nonetheless wantonly disregarded them." *Richmond v. Huq*, 885 F.3d 928, 938 n.3 (6th Cir. 2018). *See also Griffith v. Franklin Cty., Ky.*, 2019 WL 1387691, at * 5 (E.D. Ky. 2019) (holding that after *Kingsley*, a pretrial detainee need not show subjective deliberate indifference). While Plaintiffs here satisfy either standard, there is no need for the Court to reach these issues. It can simply apply *Bell*, as recently reaffirmed by the Sixth Circuit in *J.H. v. Williamson Cty., Tenn.*, 951 F.3d 709 (6th Cir. 2020).

**B.** **Plaintiffs' Release Is the Sole Effective Remedy for the Constitutional Violation at Issue.**

Plaintiffs' immediate release is the sole effective remedy for the constitutional violation here. When the government fails to meet its obligations to provide adequate care, courts have a responsibility to remedy the constitutional violation using their broad powers to fashion equitable relief. *See Brown v. Plata*, 563 U.S. 493, 511 (2011) ("When necessary to ensure compliance with a constitutional mandate, courts may . . . plac[e] limits on a prison's population.").

To vindicate detainees' Due Process rights in the face of the COVID-19 pandemic, federal and state courts across the country have ordered the release of detained individuals, including health-compromised people like Plaintiffs, and including those with similar or less severe medical conditions. *See, e.g.*, *E.g., Malam v. Adducci*, No. 5:20-cv-10829, ECF. 22, 29 (E.D. Mich., Apr. 5 2020, Apr. 9, 2020) (ordering release of ICE detainees); *Thakker v. Doll,* ___ F.Supp.3dd ___, 2020 WL1671563 (M.D. Pa. Mar. 31, 2020) (as to ICE detainees in Pennsylvania, ordering release of prisoners with conditions including high cholesterol and repeated flu symptoms); *Basank v. Decker*, No. 20-cv-2517 (AT), --- F. Supp. 3d ----, 2020 WL 1481503 (S.D.N.Y. Mar. 26, 2020) (releasing asthmatic plaintiffs and others from facility with positive test cases for COVID-19); *Rafael L.O. v. Tsoukaris*, No. 2:20-cv-3481-JMV, 2020 WL 1808843 (D.N.J. Apr. 9, 2020) (same) *Hope v. Doll*, No. 1:20-cv-562, Dkt. 12 (M.D. Pa. Apr. 7, 2020), *motion for reconsideration denied* (Apr. 10, 2020)(releasing asthmatic plaintiffs and others with various health vulnerabilities); *Bravo Castillo v. Barr*, No. 20-605-TJH (AFMx), --- F. Supp. 3d ----, 2020 WL 1502864 (C.D. Cal. Mar. 27, 2020) (ordering release of prisoners with medical conditions including kidney stones and facial fracture).[7]

---

[7] Additionally, this week at least two class action complaints have resulted in larger-scale release or control orders, where the virus had already entered the facility. *See* Order, *Wilson v. Williams,*

In this case, as in the many similar cases listed above, the Plaintiffs' immediate release from detention is the only effective remedy for the constitutional violation they are suffering. There is no known cure or treatment for COVID-19, no known vaccine, and no known natural immunity. Social distancing is essential to mitigate the spread of contagion. At Butler and Morrow, Plaintiffs cannot maintain the necessary distance from either their fellow detainees or the staff at the facility sufficient to protect their health. Because Plaintiffs have shown that their continued detention would cause an unacceptably high risk of grave injury, Plaintiffs are likely to succeed on the merits of their claim that their continued detention violates their rights under the Fifth Amendment, and that release from custody is the only permissible way to ensure their safety and the safety of others with whom they are forced to be in close and daily contact.

## V. THE OTHER FACTORS REQUIRED FOR A TEMPORARY RESTRAINING ORDER TIP SHARPLY IN FAVOR OF RELEASING PLAINTIFFS.

### A. Plaintiffs' Exposure to COVID-19 Constitutes Irreparable Harm.

"When constitutional rights are threatened or impaired, irreparable injury is presumed." *Obama for Am. v. Husted*, 697 F.3d 423, 436 (6th Cir. 2012); *see also Wilson v. Gordon*, 822 F.3d 934, 958 (6th Cir. 2016) ("Courts routinely uphold preliminary injunctions where the alleged irreparable harm involves delay in or inability to obtain medical services."). Keeping Plaintiffs confined in a condensed, known viral environment with a dangerous disease is the definition of a threat to their constitutional rights, even under the most stringent standard.

### B. The Public Interest and the Balance of Equities Weigh Heavily in Plaintiffs' Favor.

So long as they continue to be confined at Butler and Morrow, Plaintiffs' lives are in danger in violation of their Due Process rights. Releasing them from detention with the proper public

---

N.D. Ohio No. 4:20-cv-00794 (Apr. 22, 2020); *Hernandez Roman, et al. v. Wolf, et al.,* W.D.C.A. No. edcv-20-786-jth (Apr. 23, 2020).

16

health and safety precautions will protect their safety and remedy the continued violation of their constitutional rights, which is in the public interest. *Dodds v. U.S. Dep't of Educ.*, 845 F.3d 217, 222 (6th Cir. 2016) (protection of constitutional rights is "a purpose that is always in the public interest"). Plaintiffs' release will also promote Defendants' interest in ensuring the safety of the other detainees, facility staff, and community at large. Now that the virus has entered the facility, it is in the public interest to take emergency steps to mitigate its spread, beginning with the most medically vulnerable people like Plaintiffs. Uncontrolled spread will have dire consequences for all detainees and workers as well as the Butler and Morrow County areas, which would be drained of its limited medical resources, including intensive care unit beds and ventilators. In Ohio, the COVID-19 outbreak has already resulted in unprecedented public health measures and has strained the local health care system. Releasing vulnerable individuals will reduce the burden on the local community and health infrastructure and is clearly in the public interest. *See Calderon Jimenez*, No. 18-10225-MLW at 4.[8]

## **CONCLUSION**

For the foregoing reasons, this Court should grant Plaintiffs' Motion for a Temporary Restraining Order and direct Plaintiffs' immediate release. Plaintiffs respectfully request a hearing as soon as possible on their Motion. Because every hour they must spend in these contaminated facilities puts them at greater risk, time is of the essence.

---

[8] As detained, indigent individuals, Plaintiffs request this Court to exercise its discretion to require no security in issuing this relief. *Urbain v. Knapp Bros. Mfg. Co.*, 217 F.2d 810, 815–16 (6th Cir. 1954) ("[T]he matter of requiring security in each case rests in the discretion of the District Judge.").

Dated:  April 24, 2020

Respectfully submitted,

*/s/ Elizabeth Bonham*
Elizabeth Bonham (0093733)
Freda J. Levenson (0045916)
ACLU of Ohio Foundation
4506 Chester Avenue
Cleveland, OH 44102
Phone: (614) 586-1972
Fax: (614) 586-1974
flevenson@acluohio.org
ebonham@acluohio.org

Claire Chevrier*
ACLU of Ohio Foundation
1108 City Park Ave.
Ste. 203
Columbus, OH 43206
Phone: (614) 586-1972
Fax: (614) 586-1974
cchevrier@acluohio.org

* Application for admission *pro hac vice* forthcoming

**CERTIFICATE OF SERVICE**

I certify that on April 24, 2020, I filed the foregoing using the Court's CM/ECF System, and that all counsel of record will receive notice through that system. I further certify that full copies of the foregoing and all attachments were emailed to the United States Attorney's office for the Southern District of Ohio.

*/s/Elizabeth Bonham*

Elizabeth Bonham (0093733)